MALLINSON FABRICS CORPORATION and Another, Plaintiffs, *v.* R. H. MACY & Co., INC., Defendant.

Supreme Court, Special Term, New York County, June 29, 1939.

*Thomas, Gerli & Keefe,* for the plaintiffs.

*Leon Lauterstein,* for the defendant.

COLLINS, J. This motion by the plaintiffs for an injunction *pendente lite* presents an interesting question under the New York Fair Trade Law (Feld-Crawford Act, Laws of 1935, chap. 976).

The action is by Mallinson Fabrics Corporation (hereinafter called Mallinson) and Siegel-Lyttle, Inc. (hereinafter called Siegel) and seeks to restrain the defendant R. H. Macy & Co., Inc., from advertising, offering for sale or selling dresses under the trade-mark " Mallinson's Pure Silk Pussy Willow " at a retail price lower than that fixed by the plaintiffs.

Mallinson manufactures and sells silks and other fabrics known as " Mallinson's Pussy Willow Pure Silk Prints " which, it maintains, is a distinctive type of pure silk printed fabric known nationally by the trade name " Mallinson's Pussy Willow." Siegel is a dress manufacturer.

For the season of 1938 Siegel manufactured and sold dresses of this fabric to well-known retailers, including this defendant.

The following year Mallinson contracted with Siegel to confine to Siegel its entire production of Pussy Willow fabric in the cutting trade in the United States, and Siegel, in turn, agreed with Mallinson to sell dresses made of this fabric for not less than $7.75 each wholesale, and that the retail price would not be less than $12.95 a dress. That the defendant had knowledge of this agreement is not disputed. Siegel says he bound his customers to the retail price of $12.95, but no copy of a contract is presented.

When the defendant sought to contract with Siegel for a lot of the 1939 dresses, it was told that it could make the purchase only on condition that it would resell for not less than $12.95. The defendant refused to agree to this, stating that inasmuch as it operates on a cash basis, its policy requires underselling competitors.

After Siegel had sold some of the 1939 dresses to such well-recognized stores as Lord & Taylor and McCreery in New York and other established stores elsewhere, and after the stores advertised these " Mallinson's ' Pussy Willow ' pure silk prints " for " only $12.95," the defendant Macy advertised " A Macy Scoop, Mallinson's pure silk Pussy Willow print dresses * * * at a startling low price $8.94."

It is this underselling price which the plaintiffs urge is condemned by the law as constituting unfair competition.

Concededly: (a) The defendant's " Pussy Willow " dresses are not those of Mallinson, who does not manufacture or sell dresses, nor are they those of Siegel. They were made by an unnamed manufacturer. (b) Siegel's " Pussy Willow " dresses do not carry Siegel's trade-mark or label; attached to each dress is a paper or cardboard ticket bearing the inscription, " The material in this garment is Mallinson's Pure Silk Pussy Willow, Reg. U. S. Pat. Off." (c) The defendant's " Pussy Willow " dresses are made of Mallinson's Pussy Willow silk; thus, it advertises the truth. (d) The

plaintiffs' complaint is not directed to the defendant's sale of " Pussy Willow " dresses, but to the price thereof; they have no objection to the sale at $12.95 each. (e) The defendant and others purchase " Pussy Willow " fabric from Mallinson and dispose of it without restrictions as to resale price. (f) The manufacturer or producer of the defendant's " Pussy Willow " dresses did not fix the price at which the defendant was to resell them. (g) It is not contended that the defendant came into possession of the dresses wrongfully.

Does the defendant's conduct transgress the law? I think not. The law relates to the sale or resale of " a commodity which bears, or the label or content of which bears the trade-mark, brand or name of the producer or owner of such commodity." (Laws of 1935, chap. 976, § 1, as amd.)

As I perceive it, this dress is not a " commodity " produced or owned " by either plaintiff." Quite true, the *fabric* from which the dress is made is that of Mallinson, but Mallinson did not fix the resale price of the *fabric*. More, the fabric is not the sole element in the finished product; in addition, there are design, workmanship, trimmings, zippers, buttons, etc. The composite or ensemble, not the fabric, is the article or commodity. Who can say what the " selling point " is? Is it the fabric, the design, the workmanship, or what? The defendant has not misled or deceived the buying public. It is not attempting to pass off its goods for those of another. It is not violating any contract to which it is pledged, or any law. Obviously, the defendant outsmarted the plaintiffs. But the law does not essay to reach every case of outsmarting; nor does every case of outsmarting constitute unfair competition. I recognize the plaintiffs' embarrassment and possible loss. But I am unable to perceive that the law here invoked affords them relief.

To permit the pursuit of this fabric to the finished or ultimate product, and thereby subject such finished or ultimate product to a price-fixing contract covering the fabric would, as I view it, enable any producer or owner of a trade-marked or branded commodity to dictate the price of the finished or ultimate product of which the commodity formed but a part. The adoption of such a concept, it can easily be seen, would lead to confusion, conflict and, often, absurdity. It is inconceivable that the law has the intent and purpose advanced by the plaintiffs.

Thus, the plaintiffs have not made out a case for temporary relief in advance of trial with that clarity and strength requisite of an application for so drastic a remedy.

Accordingly, the motion is denied. Order signed.